NICOLA T. HANNA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
ROBERT F. CONTE (Cal. Bar No. 157582)
JEREMY L. BURKHARDT (Cal. Bar No. 321744)
Assistant United States Attorney
Federal Building, Suite 7211
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-6607/5810
Facsimile: (213) 894-0115
E-mail: robert.conte@usdoj.gov
jeremy.burkhardt@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROYCE GRACIE and MARIANNE CUTTIC,<br><br>Defendants. | Civil No. CV 17-3308 AFM<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Hearing Scheduled:<br>To Be Set by Court<br>Original Date Continued |

**Table of Contents**

I. Introduction....................1

II. The FBAR Penalty....................2

III. Argument....................4

1. The Government Was Authorized To Assess "Willful" Penalties For Multiple Violations That In The Aggregate Exceeded $100,000....................4

2. The IRS Was Authorized To Assess Penalties With Respect To The Swiss Account That Individually Exceeded $100,000....................7

a. The maximum penalty established in 31 C.F.R. § 1010.820(g) is no longer valid....................7

b. The initial willful penalty regulation, 31 C.F.R. § 103.47, was not an exercise of agency discretion and does not cap the willful penalty at $100,000....................10

c. The Treasury Department did not exercise discretion to restrict the willful penalty through ministerial acts, like renumbering the regulation or adjusting the penalty amount for inflation....................12

IV. Conclusion....................14

# Table Of Authorities

**CASES**

Engel v. CBS, Inc., 886 F.Supp. 728 (C. D. Cal. 1995)...............8

Norman v. United States, 138 Fed. Cl. 189 (2018)..............3, 8, 9

Perez v. Mortg. Bankers Ass'n, 135 S.Ct. 1199 (2015)...............11

United States v. Colliot, 2018 WL 2271381 (W.D. Tex. May 16, 2018)..................................................6, 7, 8

United States v. Gonzales, 546 U.S. 243 (2006)....................10

United States v. Larionoff, 431 U.S. 864 (1977)..................8, 9

United States v. Shinday, Case No. 2:18-cv-06891, 2018 WL 6330424 (C.D. Cal. December 3, 2018)..........................6

United States v. Wahdan, 325 F.Supp. 3d 1136 (D. Colo. 2018).6, 7, 8, 9

**STATUTES**

28 U.S.C. § 2461............................................13

31 U.S.C. § 5314.......................................2, 3, 9

31 U.S.C. § 5321.........................2, 3, 4, 5, 7, 8, 9, 10, 13

31 U.S.C. § 5321 (West 1986)...................................10

**OTHER AUTHORITIES**

51 Fed. Reg. 30233-01 (Aug. 25, 1986)..............................11

52 Fed. Reg. 11436-01 (Apr. 8, 1987)...............................11

64 Fed. Reg. 45438 (Aug. 20, 1999)..................................3

81 Fed. Reg. 42503 (June 30, 2016).................................13

Final Rule, 75 Fed. Reg. 65806 (Oct. 26, 2010)..................4, 12

**REGULATIONS**

31 C.F.R. § 1010.306...........................................2

31 C.F.R. § 1010.350...........................................2

31 C.F.R. § 1010.820.....................4, 5, 6, 7, 8, 9, 10, 12, 14

31 C.F.R. § 1010.821...................................12, 13, 14

31 C.F.R. § 103.47....................................3, 5, 9, 10, 11

31 C.F.R. § 103.57....................................3, 4, 9, 10, 12

## Memorandum of Points and Authorities

### I. Introduction

Defendants have been assessed FBAR penalties for their willful failure to disclose to the U.S. Treasury their interest in two foreign accounts during the year 2008. As authorized by law, separate penalties have been assessed with respect to each defendant and with respect to each account. A penalty in the amount of approximately $160,000 has been assessed against each defendant with respect to their interest in an account at the Swiss bank HSBC Switzerland (the Swiss account) and a penalty in the amount of $50,000 has been assessed against each defendant with respect to their interest in an account at the Spanish bank Caixa Penedes, Spain (the Spanish account). Accordingly, approximately $210,000 has been assessed in total against each defendant with respect to these two foreign accounts for 2008.

Defendants' motion for partial summary judgment now challenges the government's legal authority to make these assessments and asserts that a now obsolete Treasury Regulation (first adopted in 1986 and then superseded by statute in 2004) caps and limits the penalty that may be assessed against each defendant to $100,000 in total. See Motion, p. 3 (identifying the issue as "[w]hether the assessed FBAR penalties . . . exceed the IRS's authority to the extent it exceeds a total of $100,000 for each defendant").

Defendants' motion, however, must fail for the following reasons. First, there is no authority in the statute, regulations, or case law that supports defendants' position that there is an annual per year aggregate cap of $100,000 on the amount of the

penalties that may be assessed against each defendant. On the contrary, FBAR penalties are calculated and assessed annually on a per account basis, as they were in this case. Accordingly, the government was authorized to make separate penalty assessments with respect to each foreign account. Second, defendants' argument that the 1986 regulation limiting per-account assessments to $100,000 was not superseded by the 2004 amendment to the FBAR penalty statute is wrong. As the Court of Federal Claims clearly held in Norman v. United States, 138 Fed. Cl. 189, 195 (2018), and for other reasons set forth herein, the 1986 regulation's penalty framework is obsolete and no longer controlling. Accordingly, for example, the government was authorized to assess a $160,000 penalty against each defendant with respect to the Swiss HSBC account.

For these reasons, and the reasons set forth herein, the Court should deny defendants' motion.

## II. The FBAR Penalty

The Currency and Foreign Transactions Reporting Act, also known as the Bank Secrecy Act (BSA), 31 U.S.C. § 5311-25, was enacted in 1970. Pub. L. 91-508, 84 Stat. 1114. The BSA, as relevant here, requires U.S. citizens to report to the Secretary of the Treasury any interests they hold in foreign financial accounts with balances over $10,000 on a form commonly known as an FBAR. 31 U.S.C. § 5314; 31 C.F.R. §§ 1010.306 and 1010.350. Individuals who fail to timely report a foreign account may be assessed a civil penalty. See 31 U.S.C. §§ 5314 and 5321. Section 5321(a)(5) of Title 31 was amended in 2004 to provide an increased penalty amount for willful FBAR violations. Under the amended statute, a penalty for a willful FBAR

violation can be the greater of $100,000 or 50% of the balance in the account at the time of the violation. 31 U.S.C. § 5321(a)(5)(C)-(D).

Before 2004, 31 U.S.C. § 5321(a)(5) provided that the Treasury Secretary could impose a maximum willful FBAR penalty of $25,000 or "an amount (not to exceed $100,000) equal to the balance in the account at the time of the violation," whichever was greater. Parroting the statute, 31 C.F.R. § 103.47(g) authorized "a civil penalty not to exceed the greater of the amount (not to exceed $100,000) equal to the balance in the account at the time of the violation, or $25,000" for a willful FBAR violation.[1] In 2004, Congress amended 31 U.S.C. § 5321 to increase the maximum civil penalty for willful violations of the FBAR reporting requirements.

In the amended 31 U.S.C. § 5321, Congress provided that the maximum civil penalty for willful violations of 31 U.S.C. § 5314 occurring after October 22, 2004, "shall be increased" to the greater of $100,000 or 50% of the balance in the account at the time of the violation. 31 U.S.C. § 5321(a)(5)(C) and (D) (emphasis added). The amended statute eliminated the $100,000 cap contained in the prior version of 31 U.S.C. § 5321 and its regulation, 31 C.F.R. § 103.57, on willful violations and "mandate[d] that the maximum penalty allowable for willful failure to report a foreign bank account be set at a specific point: the greater of $100,000 or 50 percent of the account's balance." Norman v. United States, 138 Fed. Cl. 189, 195 (2018). Because the amended penalty structure superseded the prior statutory and regulatory provisions, the IRS stopped applying the penalty maximums in the regulation and began applying, consistent

[1] Section 103.47, among others, was renumbered in 1999 to 103.57. See 64 Fed. Reg. 45438, 45451 (Aug. 20, 1999).

with Congress' intentions, the penalty maximums in 31 U.S.C. § 5321(a)(5), as amended.

Despite the 2004 changes to 31 U.S.C. § 5321(a)(5), the Treasury Department has not, to date, repealed 31 C.F.R. § 103.57. It did, however, renumber the regulation to 31 C.F.R. § 1010.820 as part of a 2010 restructuring of the BSA regulations. See Final Rule, 75 Fed. Reg. 65806 (Oct. 26, 2010). But this renumbering was in no way an exercise of the Treasury Department's rulemaking authority; rather, it was merely renumbering the BSA regulations in a way that made them easier to find. See id.

## III. Argument

### 1. The Government Was Authorized To Assess "Willful" Penalties For Multiple Violations That In The Aggregate Exceeded $100,000.

Defendants have each been assessed two FBAR penalties totaling approximately $210,000 with respect to their alleged willful failure to report their interest in two foreign accounts during the year 2008: one penalty in the amount of $160,000 for the Swiss account, and one penalty in the amount of $50,000 for the Spanish account. Relying on the now-obsolete Treasury Regulation – 31 C.F.R. § 1010.820(g) – and two trial court decisions, defendants contend that the IRS was prohibited from assessing multiple penalties that, in the aggregate, exceeded $100,000 per year, per defendant. Neither the statute, the regulation, nor the case law support the defendants' argument.

Section 5321 of Title 31 and its implementing regulations authorize a "willful" penalty based on each undisclosed foreign account. Specifically, 31 U.S.C. § 5321(a)(5)(C)-(D) provide for a maximum penalty amount for "a violation involving a failure to report

the existence of an account" that is calculated based on "the balance in the account at the time of the violation." 31 U.S.C. Section 5321(a)(5)(D) (emphases added). The statute's plain language authorizes the determination and assessment of the maximum willful penalty amount on a per-account basis. The statute does not place an upper limit on the aggregate FBAR penalty amount that may be assessed for a taxpayer's failure to report multiple foreign accounts in a given year.

Likewise, the Treasury Regulation enacted in 1986 (upon which defendants rely for their $100,000 penalty cap) authorized and established maximum penalty amounts on a per-account basis for any willful violation of the reporting requirements.[2] See 31 C.F.R. § 103.47(g)(2) (authorizing "a civil penalty not to exceed the greater of the amount (not to exceed $100,000) equal to the balance in the account at the time of the violation, or $25,000"). For the reasons explained below in Section 2.a., the United States contends that the 1986 regulation – renumbered as 31 C.F.R. § 1010.820(g) – and its purported $100,000 penalty cap have been superseded by statute. Nevertheless, assuming for argument's sake that 31 C.F.R. § 1010.820(g) continues to establish a maximum FBAR penalty amount of $100,000, it does so on an individual penalty and per-account basis; it does not provide an aggregate cap for penalties based on a defendant's failure to report multiple foreign accounts. For example, it would not prohibit the IRS from assessing four $100,000

[2] At the time of its promulgation, 31 C.F.R. § 103.47(g) parroted the maximum penalty amounts prescribed in 31 U.S.C. § 5321(a)(5).

penalties for a defendant's willful failure to disclose four foreign accounts in one year.

Defendants rely on two district court opinions to support their argument that the "willful" penalty is limited to an aggregate of $100,000 per year. See United States v. Colliot, 2018 WL 2271381 (W.D. Tex. May 16, 2018); United States v. Wahdan, 325 F.Supp. 3d 1136 (D. Colo. 2018). Both courts concluded, however, that FBAR penalties that individually exceeded $100,000 (and therefore the purported cap in 31 C.F.R. § 1010.820(g)) were unlawful.[3] Unfortunately for defendants, neither of those cases held that 31 C.F.R. § 1010.820(g) established the maximum limit on the aggregate penalty amount in a given year.[4]

In Wahdan, the IRS sought to reduce to judgment "numerous penalties for multiple FBAR violations" for 2008, 2009, and 2010. 325 F.Supp.3d at 1137. The Wahdans moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Id. But their motion and the opinion concerned only the FBAR penalties that individually exceeded $100,000, namely, a $1,108,645 penalty assessed for 2008, a $599,234 penalty assessed for 2009, and a $599,234 penalty assessed for 2010. Id. The court ruled that 31 C.F.R. § 1010.820(g) set a maximum penalty of $100,000, and that the three penalties that individually exceeded $100,000 would be so limited. The court did

---

[3] For the reasons explained below in Section 2.a., the United States contends that both Wahdan and Colliot were incorrectly decided.

[4] A trial court in this district recently held that the holdings in Colliot and Wahdan did not support an aggregate limit on FBAR penalty assessments because both cases dealt only with FBAR penalties that individually exceeded $100,000. United States v. Shinday, Case No. 2:18-cv-06891, 2018 WL 6330424 at *4 (C.D. Cal. December 3, 2018).

not limit the aggregate penalty amount nor the remaining assessments for 2009 and 2010, "many of which were flat amounts of $100,000." Id. Indeed, the court made its holding clear: "[t]he IRS is not empowered to impose yearly penalties in excess of $100,000.00 per account." Id. at 1141 (emphasis added).

Similarly, in Colliot, the IRS assessed numerous FBAR penalties: four FBAR penalties totaling $548,773 for 2007; four FBAR penalties totaling $196,082 for 2008; and smaller penalties assessed for 2009 and 2010. 2018 WL 2271381, at *1. Colliot moved for summary judgment with respect to a $323,773 penalty assessed for 2007, contending that the penalty exceeded the applicable maximum set forth in 31 C.F.R. § 1010.820. Id. The court agreed, but its reasoning is clearly limited to FBAR penalties that individually exceeded the cap set forth in 31 C.F.R. § 1010.820(g).

Neither the statute, regulation, nor case law supports defendants' argument. Rather, the plain language of 31 U.S.C. § 5321(a)(5)(C) authorizes penalty assessments and establishes maximum penalty amounts on a per-account basis. Accordingly, the IRS's FBAR penalty assessments with respect to defendants' failure to disclose two foreign accounts (the Swiss account and the Spanish account) are not limited to $100,000 in the aggregate.

**2. The IRS Was Authorized To Assess Penalties With Respect To The Swiss Account That Individually Exceeded $100,000.**

**a. The maximum penalty established in 31 C.F.R. § 1010.820(g) is no longer valid.**

The IRS assessed one FBAR penalty against each defendant in the amount of $160,000 for their failure to disclose the Swiss account. As described above, 31 U.S.C. § 5321(a)(5), as amended, unambiguously

increased the maximum civil penalty for willful violations of the FBAR reporting requirements, and authorized IRS to assess an FBAR penalty that individually exceeded $100,000. The maximum penalty established in 31 C.F.R. § 1010.820(g) is no longer valid.

In Norman v. United States, the Court of Federal Claims concluded that the maximum penalty set forth in 31 C.F.R. § 1010.820 was inconsistent with the amended 31 U.S.C. § 5321(a)(5) and invalidated the regulation as inconsistent with the statute under which it was promulgated. 138 Fed. Cl. 189, 196 (2018)(citing United States v. Larionoff, 431 U.S. 864, 873 (1977)). The linchpin of the Court of Federal Claims' conclusion was Congress' use of "shall" in 31 U.S.C. § 5321(a)(5)(C). It reasoned that by "us[ing] the imperative, 'shall,' rather than the permissive, 'may,'" in amending the maximum willful FBAR penalty, Congress divested from the Treasury Secretary the "discretion to regulate any other maximum." Id. at 196.

However, two courts have concluded that the IRS may not impose willful FBAR penalties that individually exceed $100,000.[5] Colliot, 2018 WL 2271381 at *4; Wahdan, 325 F.Supp.3d at 1141. Both Colliot and Wahdan concluded that 31 C.F.R. § 1010.820 "cabins" the IRS's authority to assess willful penalties to no more than $100,000, despite the statute's unambiguous language to the contrary. Colliot, 2018 WL 2271381 at *4; Wahdan, 325 F.Supp.3d at 1141. These courts perceived no inconsistency in the regulation's penalty structure and that of the statute, reasoning that "the penalty cap in the

[5] Neither case, of course, is binding on the Court. Both are from outside of the Ninth Circuit and therefore authoritative only to the extent that they are persuasive. See Engel v. CBS, Inc., 886 F.Supp. 728, 731 (C. D. Cal. 1995).

regulation is, in essence, a subset of the penalties that could be imposed under the statute" and that "in the exercise of statutory discretion, the [Treasury] Secretary limited the penalties that the IRS could impose to $100,000." Wahdan, 325 F.Supp.3d at 1139. Those decisions are wrong.

In 31 U.S.C. § 5321(a)(5)(C)-(D), as amended, Congress provided that the maximum civil penalty for willful violations of 31 U.S.C. § 5314 occurring after October 22, 2004, "shall be increased" to the greater of $100,000 or 50% of the balance in the account at the time of the violation. (Emphasis added). As explained by the Court of Federal Claims, by "us[ing] the imperative, 'shall,' rather than the permissive, 'may,'" in amending the maximum willful FBAR penalty, Congress divested from the Treasury Secretary the "discretion to regulate any other maximum." Norman, 138 Fed. Cl. at 195. It thus eliminated 31 C.F.R. § 1010.820(g)'s $100,000 cap on willful violations and "mandate[d] that the maximum penalty allowable for willful failure to report a foreign bank account be set at a specific point: the greater of $100,000 or 50 percent of the account's balance." Id. As amended, the text of 31 U.S.C. § 5321(a)(5) is clearly inconsistent with the 31 C.F.R. § 1010.820(g). Id. Accordingly, the statute invalidated 31 C.F.R. § 1010.820(g), see Larionoff, 431 U.S. at 873, and the IRS was authorized to assess an FBAR penalty in excess of $100,000 against each defendant for their failure to disclose the Swiss account.

**b. The initial willful penalty regulation, 31 C.F.R. § 103.47, was not an exercise of agency discretion and does not cap the willful penalty at $100,000.**

Defendants' argument that the 2004 statute gave the Secretary discretion to impose penalties for FBAR violations and the Secretary previously exercised that discretion in 1986 and capped the penalty at $100,000 is incorrect. See Motion, p.5. As defendants acknowledge in their Motion, the initial willful penalty regulation, originally codified at 31 C.F.R. § 103.47(g), simply parroted the language of the pre-2004 statute with respect to computing willful penalties and capping them at $100,000.[6] See Motion, p.4. Rather than setting a limit below the statutory maximum as set forth in pre-2004 31 U.S.C. § 5321(a), § 103.47(g) set the penalty at the statutory maximum. Compare 31 C.F.R. § 103.47(g)(2) with 31 U.S.C. § 5321(a) (West 1986). Accordingly, the Treasury did not exercise any rulemaking discretion when it simply adopted the language of the statute in the regulation. See United States v. Gonzales, 546 U.S. 243, 257 (2006)(parroting regulations are not an exercise of agency rulemaking discretion).

Accordingly, because the parroting regulation was not an exercise of agency discretion, the Treasury Secretary did not make a policy decision in 1986 to forever cap the willful penalty at $100,000 (even in the face of future statutory penalty increases). That argument is nonsensical where the regulation simply parroted the old statute. There is nothing in the Federal Register or elsewhere

[6] As explained in footnote 1, supra, the initial willful penalty regulation was originally numbered § 103.47(g) and later renumbered to § 103.57(g) in 1999. That regulation was once again renumbered § 1010.820(g).

that supports the claim that 31 C.F.R. § 103.47(g) was a rule intended by the Treasury to cap or "cabin" the willful penalty even in the face of subsequent penalty increases by Congress. See 51 Fed. Reg. 30233-01, 30241 (Aug. 25, 1986) (willful penalties are not mentioned in 1986 notice of rule making).

Further, defendants' suggestion that the willful penalty framework in 31 C.F.R. § 103.47(g) was issued after notice and comment is incorrect. See Motion, p. 4. Although the proposed rule was put up for notice and comment in the Federal Register, the rule did not yet contain a reference to the willful FBAR penalty. See 51 Fed. Reg. 30233-01, 30241 (Aug. 25, 1986). The Treasury Secretary later added 31 C.F.R. § 103.47(g) regarding the willful penalty, without notice and comment. See 52 Fed. Reg. 11436-01, 11446 (Apr. 8, 1987). Thus, the language in § 103.47(g) was neither present in the proposed rule subjected to the public notice-and-comment process nor the outgrowth of any feedback received during that process.

After the 2004 amendment to the statute, the Treasury never went through the required notice-and-comment procedures to cap and "cabin" the increased penalty authorized by the amended statute. Defendants have not shown by any citation to the Federal Register or elsewhere that the regulation capping the penalty (a dramatic departure from the 2004 amended statute) was properly vetted and supported by sound policy judgment at any time, and certainly not after 2004. See Perez v. Mortg. Bankers Ass'n, 135 S.Ct. 1199, 1203 (2015)(only rulemaking accomplished through proper notice and comment has the force and effect of law).

**c. The Treasury Department did not exercise discretion to restrict the willful penalty through ministerial acts, like renumbering the regulation or adjusting the penalty amount for inflation.**

Defendants' reliance on the Treasury Secretary's ministerial tasks, like renumbering § 103.57(g) or adjusting the $100,000 penalty to account for inflation is misplaced. See Motion, p. 5. These ministerial tasks cannot be an exercise of the Treasury Secretary's discretion to limit the maximum penalty.

With respect to the renumbering, in 2010, the Treasury reorganized its regulations regarding the BSA and, in that process, renumbered the obsolete regulation from 31 C.F.R. § 103.57 to 31 C.F.R. § 1010.820. See Final Rule, 75 Fed. Reg. 65806 (Oct. 26, 2010). The republication of the regulation with a new number was not an exercise of the Treasury Secretary's rulemaking authority to limit the willful FBAR penalty to an amount less than the maximum established by Congress. Rather, the Treasury renumbered the BSA regulations to make it easier to find regulatory requirements. Id. Because the renumbering was ministerial, not substantive, the Treasury Department rejected as "outside the scope of th[e] rulemaking" "all comments . . . that requested a substantive change, or would result in a substantive change" to the renumbered regulations. Id. at 65807. And consistent with the ministerial nature of the changes, it explicitly declined to repeal portions of the regulations that appeared obsolete, including "certain portions of the previous 31 C.F.R. § 103.57." Id. The republication of the regulation did not change its validity or effectiveness.

Defendants' reliance on the Treasury Secretary adjusting the $100,000 penalty for inflation, provided in 31 C.F.R. §§ 1010.820(i)

and 1010.821(b), to support their argument that the obsolete penalty cap was never superseded is similarly misplaced. See Motion, p. 5. The inflation regulation only provides inflation calculations for civil monetary penalties that are subject to adjustment under the Federal Civil Penalties Inflation Adjustment Act ("FCPIA") (as further amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015), which is codified as a note under 28 U.S.C. § 2461.[7] The interim final rule promulgating § 1010.821(b) clarifies that the FCPIA does not apply to certain BSA penalties that "lack a stated dollar amount and are instead written solely as functions of violations." 81 Fed. Reg. 42503, 42504 (June 30, 2016). In a memorandum from the OMB dated February 24, 2016, entitled "Implementation of the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015," the OMB advised agencies that:

> the adjustment [required by the FCPIA] will apply only to penalties with a dollar amount, and will not apply to penalties written as functions of violations. . . . In the case of a penalty with only some dollar amounts, e.g., "the penalty shall be the maximum of either twice the value of the transaction or $250,000," only the dollar figure, in this case $250,000, will be subject to adjustment.

See OMB, Memorandum for the Heads of Executive Departments and Agencies (Feb. 24, 2016), available at https://www.whitehouse.gov/sites/whitehouse.gov/files/omb/memoranda/2016/m-16-06.pdf. Just like the example provided in the OMB memorandum, the maximum penalty under 31 U.S.C. § 5321(a)(5)(C) is either a dollar amount or a penalty that is a "function of the

7 Under the FCPIA, "'civil monetary penalty' means any penalty, fine, or other sanction that –- (A)(i) is for a specific monetary amount as provided by Federal law; or (ii) has a maximum amount provided for by Federal law. . . ." 28 U.S.C. § 2461, note.

violation:" $100,000, or 50 percent of the account balance at the time of the violation. The FCPIA therefore does not apply, and certainly does not cap, the maximum penalty based on 50 percent of the account balance.[8] Accordingly, the Treasury Secretary was not setting a lower penalty maximum in implementing §§ 1010.820(i) and 1010.821.

## IV. Conclusion

For the reasons stated above, defendants' motion for partial summary judgment should be denied.

Dated: January 31, 2019

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

/s/ Jeremy L. Burkhardt
JEREMY L. BURKHARDT
Assistant United States Attorney

/s/ Robert F. Conte
ROBERT F. CONTE
Assistant United States Attorney

---

8 The FCPIA may apply to penalties for willful violations involving account balances of less than $200,000, because the maximum penalty for those violations remains $100,000, a "dollar amount." If those penalties are assessed after August 1, 2016, then pursuant to 31 C.F.R. §§ 1010.820(i) and 1010.821, the $100,000 maximum penalty may be adjusted for inflation.